[S. F. No. 1248.    Department One.—March 6, 1900.]

## L. W. MURDOCK, Appellant, v. OAKLAND, SAN LEANDRO, AND HAYWARDS ELECTRIC RAILWAY, Respondent.

MASTER AND SERVANT — NEGLIGENCE — DEFECTIVE CAR — CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK—QUESTIONS OF FACT—NONSUIT.— In an action for an injury to the conductor of a defective car negligently used by an electric railway company, where the negligence of the company clearly appeared, and the evidence showed that the conductor had only used the car once before, a week previously, and had only used it one hour on his second trip, when he was injured by a lunging of the defective car, while doing his duty in watching the trolley at a crossing, and there was no evidence that he knew that the car was the same he had previously used, or that he knew it had not been repaired, the conductor cannot be charged with contributory negligence, or with assumption of the risk, as matter of law. These are questions of fact, which should have been submitted to the jury; and it was error to grant a nonsuit.

ID.—REASONABLE TIME FOR COMPLAINT AND FOR REMEDY OF DEFECT—
QUESTION OF FACT.—A servant is allowed a reasonable time, in
view of the circumstances of the case, in which to complain of a
discovered defect in an appliance furnished by the master, and is
also justified after complaint made, in continuing work for a rea-
sonable time in expectation that the defect will be remedied; and
what, under the circumstances, would be a reasonable time for
either purpose is ordinarily a question of fact for the jury. Un-
der the circumstances of this case, it was essentially a question
of fact, and not of law.

ID.—NEGLIGENT MODE OF PERFORMING DUTY OF CONDUCTOR—QUESTION
OF FACT.—The question whether the mode selected by the con-
ductor for performing the duty imposed upon him of watching
the trolley and holding the trolley rope at a crossing to replace
it, if it should become displaced, amounted to contributory neg-
ligence, is a question of fact alone. The mere fact that, if he
had selected another mode of performing his duty, the injury
would have been avoided, does not conclusively show contribu-
tory negligence, as matter of law.

ID.—NEGLIGENCE OF FELLOW-SERVANT—STARTING CAR WITHOUT BRAKES
SET—QUESTION OF FACT.—When the setting of the brakes before
the starting of the car was not authorized by the railway com-
pany, and was liable to result in damage to the car, and was out
of the ordinary way, and was only a partial remedy for the de-
fect in the lunging of the car, and where there is no evidence
that the brakes were not set when the car started, at the time
of the injury, the question of whether the injury was caused by
the negligence of the motorman, as a fellow servant, is one of
fact for the jury, and not one of law for the court.

APPEAL from a judgment of the Superior Court of Alameda
County. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

M. C. Chapman, and R. E. Hewitt, for Appellant.

Samuel Bell McKee, and A. A. Moore, for Respondent.

GAROUTTE, J.—Plaintiff, a conductor on one of defend-
ant's street-cars, brought this action to recover damages for
personal injuries received while in the employment of defend-
ant. He based his cause of action upon the ground that the
car furnished him was defective. Judgment went against him
upon motion for nonsuit, and he appeals.

Does the evidence justify the nonsuit? This interrogatory
involves the questions: 1. Was the defendant guilty of negli-

gence in furnishing the car upon which the accident happened?
2. If so, was the plaintiff guilty of contributory negligence, or,
in other words, did the plaintiff assume the risk of working
upon that particular car? We have little trouble in answering
the first of these questions in the affirmative. The defendant
was guilty of gross negligence in sending out this car for the
patronage of the public. This negligence bordered on reck-
lessness. According to all the evidence the car was utterly un-
fit for the work to which it was directed. As a sample of the
evidence showing its defective condition we quote from the
testimony of one Gish, the motorman at the time the accident
occurred: "I reported this car to the foreman, December 26th.
I told him, I says: 'It is a shame that a man has got to run
a car like that.' I says, 'That car ought not to be on the road.'
I says, 'Somebody is liable to get killed on it.' I says, 'I can't
handle that car in any shape.' 'Well,' he says, 'Gish, I know it,
but,' he says, 'I can't do any better.' He says, 'I have ordered
material.' He says, 'They won't get it for me.' He says, 'I can't
fix the cars if they don't get stuff to fix them.' We were short
of cars at that particular time more than usual. I told him
that the car was bad on the contact plate, and for three or
four seconds, something of that kind, and when she started she
started with a lunge that was very dangerous to have such a car
on the road. That was about a week before New Year's." The
accident occurred January 1st, and as to what occurred on the
previous evening the witness testified: "When I came in in the
evening I kicked like blazes because I had to take it out in the
morning. I asked if the car had been fixed, if that rheostat
had been fixed. They said no. . . . . I found No. 12 op-
posite my name and Murdock's. I kicked about taking out
that car. . . . . The car jumped worse New Year's day than
it did on the 26th of December, because it had been get-
ting worse. The longer it run the worse it got. I know that
I braced myself and held on to the side of the seat, the con-
troller, or something. When the car started, it started with a
lunge. I did that to brace myself from being thrown back
through the glass door, or even thrown in any direction." O. O.
Fox, an employee of defendant at the time of the accident,
testified: "I was acquainted with that car on and before the

first day of January, 1896. Prior to January 1, 1896, when I was last employed on it, it started very quick. I don't know of any way to describe it other than to say it started very quick with a sudden jump, a sudden jerk. It jumped very heavy. It jerked much, so much so that the last few days I run the car I used to have to hold on to one of the rods across the window to avoid being thrown back. . . . . When I was conductor on car No 12 (this car), shortly before January 1, 1896, if a passenger got on the car and I had to give a signal to go ahead before they were seated, I always had to steady them by the back with my hand to keep them from being thrown when the car started, because the car started so quick it was liable to jerk them off their feet. I had to do that often."

As to the negligence of the defendant in furnishing this car for the use of the public, or even for the use of the motorman and conductor, nothing more need be said.

Was plaintiff guilty of contributory negligence, or, stating it in a different form, did plaintiff assume the risk in working upon this defective car? The accident happened in the following manner: The car was moving slowly over a crossing. Plaintiff was standing at the back of the car against the dashboard holding the trolley to replace it if it became displaced. At this moment of time the car gave a sudden lunge forward and threw him upon the controller stand, serious personal injuries being the result. He had been previously instructed by the superintendent of defendant that at all crossings he was to watch the trolley and hold the trolley rope. He was standing at the proper place to carry out these instructions when he was injured. At this time plaintiff was upon his second trip, and but an hour or so had elapsed since he began work. It also appears that plaintiff worked upon this car December 25th, but there is no evidence that at the time plaintiff went to work January 1st, the day of the injury, he knew the car to be the same. Neither is there any evidence that he knew that the car had not been repaired, conceding he had previous knowledge of its defective character. Neither did he know that the condition of the car was worse upon the first day of January than it was upon the 25th of the previous December, conceding he knew the car to be the same. Some of these facts are stated upon the evidence introduced

favorable to plaintiff.  For the reasons suggested in this immediate connection, we lay aside from the consideration of the case the fact that plaintiff had used the car upon a day one week previous to the accident.  Even conceding that under some special aspect of the case such user would be a bar in law to plaintiff's recovery, we have not that aspect of the case here, and clearly, as to that feature of the evidence, the case should have gone to the jury.  After this elimination we then have the case reduced to its lowest terms as follows: Plaintiff went to work upon a defective car, not knowing at the time it was defective, but soon after discovered the defect, and that the use of the car was surrounded with some danger, and thereupon continued work for the period of an hour or more until he was injured.  Do these facts justify a nonsuit?  We are clear to the contrary.  To support a judgment of nonsuit upon these facts it would have to be held that the mere user of a defective appliance by the servant with knowledge of the danger in the use, for a period of time however limited, barred a recovery from the master for injuries received.  This is not the law.

Shearman and Redfield on Negligence, section 211, declare it to be the right in law of an engineer to continue his journey upon a defective engine carrying a train of passengers, no better engine being obtainable, and the risk not being extraordinary. The authors then say: "If every man should cease from work upon the instant of discovering that his safety was imperiled by the negligence of some other person, the business would come to a stand.  If every servant on a railroad or in a factory should refuse to work by the side of a negligent fellow-servant, or with defective materials, immediately upon becoming aware of the fact, such enterprises could never be carried on.  Obviously, a reasonable time must be given for removal of the defect; in the meantime, the business must be carried on with no prejudice to the servant's rights, unless the risk is so great that no one acting with ordinary prudence would go on under the circumstances."  If plaintiff, upon the discovery of the defect, had at once made complaint to the defendant, and had been promised that it should be remedied, clearly he would have been justified in continuing work for a reasonable time in expectation that the promise would be kept; and what would be a reasonable time is

generally a question of fact for the jury. Again, the servant clearly had a reasonable time in which to make complaint to the master of the defect, and that presents a question of fact for the jury. In this case it was essentially a question of fact and not of law. This servant certainly was not bound to stop the car and leave it at the moment he discovered the defect, regardless of the number of passengers, and regardless of the location of the car upon the track, as to its distance from the power-house or other cars. The dangers surrounding its further use by the servant should have been great in order to justify such a course of action. There was no such great danger here. These being the principles of law bearing upon a state of facts like those at bar, it was a question of fact for the jury to say whether the plaintiff should have made complaint at once, or, as a reasonably prudent man, might have waited until noon to make complaint, or delayed until night, or still have delayed an additional length of time. This is the principle involved in *Martin v. Central Ry. Co.*, 94 Cal. 330, and the cases there cited. It will thus be seen that a servant is not barred from recovering in every case, as matter of law, when he knows a defect exists in the appliance, and that there is a certain amount of danger surrounding its use. He is not bound, as matter of law, to stop work *instanter* in all such cases. If the exercise of ordinary prudence demands that he stop work at once, he must stop, but, if otherwise, he should make complaint to the master of the defect, and for a reasonable time thereafter cannot be held as matter of law to have assumed the risk. (*Limberg v. Glenwood Lumber Co.*, 127 Cal. 598.)

Defendant insists: "Plaintiff's action in squeezing into the space (eleven inches) between controller and dashboard and leaning back over the dashboard with his head thrown back further still, looking at the trolley, and with both hands upraised, holding on to the trolley rope, was unnecessary, contrary to rules, and grossly negligent." Upon this matter plaintiff testified as follows: "I had both hands on the trolley rope. I stood with my hips right up against the dashboard of the car, with my hands on the trolley-rope, looking at the trolley. The controller's stand stood directly in front of me. There is no other place where I could have stood to manipulate the trolley

rope; the dashboard was behind me and the controller in front of me, and the space was about ten or eleven inches from the dashboard to the controller. It is the customary place, and it is the only place that you can stand. You have to be directly under the trolley wire in order to shift it, the trolley pole, from one side to the other, put it on the wire. I was looking up, the trolley having come off there the previous trip, and I was looking up in case it came off this trip to put it right on. I was holding it, my eye was on the trolley wheel to see that it didn't come off. I held my head back, looking up. I was against the dashboard and my back solidly against it; while I was occupying that position the car was started suddenly." In section 207a, in the aforesaid work upon negligence, we find the following: "The mere fact that a servant was injured because of the way of performing a duty which he selected, when if he had selected another way the injury would have been avoided, does not conclusively show contributory negligence." The contention here advanced presents a question of fact alone.

It is also claimed that the car could be started with safety if started with the brakes on, and that plaintiff cannot recover because of the negligence of his fellow-servant, the motorman, in not starting the car with the brakes set. It certainly would be somewhat out of the ordinary way to set the brakes before starting the car, although this course was practiced to a limited extent upon several occasions by the motorman. Yet this was only a partial remedy for the trouble, and one which was very liable to result in damage to the car, and one not expressly authorized by the defendant. Aside from this, we find no evidence in the record that the motorman did not put on the brakes before starting the car at the time the accident occurred. This whole question was essentially one of fact for the jury to pass upon, and not one of law for the court.

For the foregoing reasons the judgment is reversed and cause remanded.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.